UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DearDoc, Inc.,<br><br>*Plaintiff*,<br><br>-against-<br><br>Cloudgain, Inc., Carmelo Camilleri and Andrew Marc Antonio a/k/a Andrew Sussman,<br><br>*Defendants*, | Case No.:<br><br><br>**COMPLAINT** |

Plaintiff DearDoc, Inc., by and through its undersigned attorneys, Kahn Yuniver Law, bring the following Complaint against defendants Cloudgain, Inc., Carmelo Camilleri and Andrew Marc Antonio a/k/a Andrew Sussman (collectively, "Defendants") in support thereof alleges, both on its knowledge, and otherwise upon information and belief, as follows:

## NATURE OF THE ACTION

1.  This is an action to restrain and redress Defendants' unlawful misappropriation of DearDoc's confidential business information, trade secrets, and client relationships through the creation and operation of a directly competing business, Cloudgain, Inc.

2.  Plaintiff seeks injunctive relief, compensatory and punitive damages, and reasonable attorneys' fees arising from Defendants' misappropriation of trade secrets, breaches of contract, duty of loyalty, and other wrongful acts.

## PARTIES

3.  Plaintiff DearDoc, Inc. ("DearDoc" or "Plaintiff") is a Delaware corporation with its principal place of business located at 75 Broad Street, New York, New York 10004.

4.  Upon information and belief, Defendant Cloudgain, Inc. ("Cloudgain") is a Delaware corporation with United States Corporation Agents, Inc. as its registered agent located at

131 Continental Drive, Suite 305, Newark, DE 19713. Cloudgain was founded by Plaintiff's former employees, Defendants Carmelo Camilleri and Andrew Marc Antonio, using DearDoc's Confidential Information and trade secrets in direct violation of their contractual obligations.

5.   Upon information and belief, Defendant Carmelo Camilleri ("Camilleri") is a natural person domiciled at either 700 Merrimac Way, Brick, New Jersey 08724, or 79 Sheldon Avenue, Staten Island, New York 10312. Camilleri was employed by Plaintiff from February 1, 2023, until he was terminated on January 30, 2025.

6.   Upon information and belief, Defendant Andrew Marc Antonio ("Antonio") is a natural person domiciled at 644 Lorhan Drive, Piscataway, New Jersey 08854. Antonio was employed by Plaintiff from May 15, 2023, until he was terminated on January 28, 2025.

## JURISDICTION AND VENUE

7.   This Court has jurisdiction pursuant to 28 U.S.C. § 1331 (federal question jurisdiction), as DearDoc is alleging, in part, Defendants' violation of 18 U.S.C. § 1836, also known as the Defend Trade Secrets Act ("DTSA").

8.   More specifically, 18 U.S.C. § 1836(c) provides that "[t]he district courts of the United States shall have original jurisdiction of civil actions brought under this section."

9.   Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to this action took place in New York County, where Plaintiff has its principal place of business.

## FACTS COMMON TO ALL CLAIMS

10.  Plaintiff DearDoc, Inc. ("DearDoc") is a healthcare technology and marketing company that has invested substantial time, effort, and capital in developing proprietary AI-driven marketing automation, patient engagement, and growth solutions specifically tailored for

medical and dental practices across the United States. DearDoc's services are unique in the marketplace and provide competitive advantages that have enabled it to build a substantial client base and reputation in the healthcare marketing industry.

11.   Defendant Cloudgain, Inc. ("Cloudgain") operates a business that claims to offer automated marketing and practice-growth services that directly compete with those provided by DearDoc.

12.   Upon information and belief, Cloudgain was founded by DearDoc's former employees, Defendants Carmelo Camilleri and Andrew Marc Antonio (collectively, the "Individual Defendants"), through the unlawful use and misappropriation of DearDoc's confidential and proprietary information and trade secrets, in violation of their employment and post-employment contractual obligations.

13.   Both Camilleri and Antonio held senior sales positions at DearDoc and were highly compensated through salary, commissions, and other benefits. At the time of termination, Antonio served as Senior Sales Director II, and Camilleri as Team Lead for Sales.

14.   On or about February 1, 2023, DearDoc extended an offer of employment to Camilleri for the position of Senior Sales Director, which he accepted and signed on or about February 2, 2023.

15.   As a condition of employment, Camilleri executed a Non-Competition, Non-Disclosure, and Non-Solicitation Agreement ("Camilleri NDA"), attached as Exhibit A to his offer letter.

16.   Similarly, on or about May 30, 2023, DearDoc extended an offer of employment to Antonio for the position of Senior Sales Director, which also incorporated an identically worded

Non-Competition, Non-Disclosure, and Non-Solicitation Agreement executed by Antonio that same day ("Antonio NDA," and collectively with the Camilleri NDA, the "NDAs").

17. During their employment, Individual Defendants were entrusted with access to DearDoc's highly confidential and proprietary business information, including trade secrets, client data, internal processes, marketing materials, pricing strategies, vendor relationships, and technology systems.

18. The NDAs required the Individual Defendants to maintain strict confidentiality over DearDoc's Proprietary Information (defined hereinbelow) and confidential information of third parties disclosed to DearDoc or to Individual Defendants in the course of their employment (collectively, "Confidential Information").

19. "Proprietary Information" is defined in the NDAs as:

- Any and all information and know-how, whether or not in writing, of a private, secret, or confidential nature concerning the Company's business or financial affairs. Proprietary Information may include, by way of example and without limitation, trade secrets, product ideas, designs, configurations, processes, methods, techniques, formulas, systems, software and codes, improvements, inventions, data, copyrightable materials, marketing plans and strategies, projects, developments, plans, sales and financial reports and forecasts, customer and prospect lists and contacts at or knowledge of customers or prospective customers, customer accounts, or other customer financial information or price lists. Proprietary Information includes without limitation, information developed by [employees] in the course of [their] employment by the Company or otherwise relating to Company-Related Inventions and Development (as defined below), which are the exclusive property of the Company, as well as other information to which [employees] may have access in connection with [their] employment.

20. DearDoc's Confidential Information is not publicly known and is always maintained with utmost secrecy, disclosed only to employees and contractors only for ordinary business purposes.

21. DearDoc employs robust security measures to safeguard its Confidential Information, including password-protected systems, two-factor authentication, firewalls, and limited access to employees based on job function, restriction on physical access to DearDoc's devices and offices, confidentiality protocols, and regular security audits. DearDoc does not provide access to its Confidential Information without confidentiality agreements in place.

22. Besides the NDAs, DearDoc's employees are also bound by Employee Handbook which contains terms and conditions related to computer usage, data confidentiality, and information security including restrictions on usage of company's data and records for "purposes unrelated to the performance of official duties."

23. Each DearDoc's employee including Individual Defendants receives training on DearDoc's confidentiality protocols during their onboarding and at least once annually thereafter.

24. The Individual Defendants were entrusted with access to DearDoc's Confidential Information only upon execution of NDAs.

25. The NDAs expressly prohibited disclosure or use of any Confidential Information without prior written authorization, and required each employee to use their best efforts to prevent its publication or misuse. The NDAs specifically stated as follows:

   - At all times, both during [their] employment with the Company and after its termination, [employees] will keep in confidence and trust all such Confidential Information, and will not use or disclose any such Confidential Information without the written consent of an officer of the Company, except as may be necessary in the ordinary course of performing my duties to the Company [...] While employed by the Company, [employees] will use [their] best efforts to prevent publication or disclosure of any Confidential Information.

26. The Individual Defendants acknowledged that a breach of confidentiality of DearDoc's Confidential Information would result in unquantifiable and irreparable damages.

27. Furthermore, the Individual Defendants agreed to maintain confidentiality of DearDoc's Confidential Information not only during but even after the termination of their employment.

28. Despite these obligations, while still employed by DearDoc and using DearDoc's Confidential Information and resources, the Individual Defendants were actively engaged in building, marketing, and launching a directly competing business—Cloudgain—in breach of their duty of loyalty to DearDoc.

29. Upon information and belief, Cloudgain was incorporated on or about January 9, 2025, while Individual Defendants were still employed by Plaintiff.

30. The Individual Defendants blatantly misappropriated DearDoc's Confidential Information by unlawfully copying, retaining and using materials including sales scripts, onboarding documents, internal processes, vendor relationships, marketing playbooks, and pricing strategies for Cloudgain's business.

31. Particularly, among other things, Individual Defendants misappropriated: (1) Client lists, (2) client contact data, (3) internal sales materials, (4) pricing information, (5) proprietary scripts and templates, (6) software features and specifications, and other non-public product documentation.

32. For instance, Cloudgain's website and promotional materials replicate substantial portions of DearDoc's intellectual property, including copied Terms and Conditions, sales scripts, playbooks, and pricing models.

33. On or about January 28, 2025, Antonio entered into a Separation Agreement and Release with DearDoc ("Antonio Separation Agreement").

34.    Shortly thereafter, on January 30, 2025, Camilleri entered into a similar Separation Agreement and Release with DearDoc ("Camilleri Separation Agreement," together with Antonio Separation Agreement, "Separation Agreements").

35.    As a condition of receiving severance payment, the Individual Defendants reaffirmed their obligations including, specifically, confidentiality, non-disparagement, and non-solicitation, and confirmed that they had returned all DearDoc property, including all documents provided during the course of their employment and company-issued laptop.

36.    However, upon information and belief, the Individual Defendants accessed DearDoc's Salesforce platform without authorization after their termination and exported internal contact lists, client information, and sales data.

37.    The Individual Defendants unlawfully retained DearDoc's Confidential Information including sales scripts, sales pitches, internal process documents, client lists, pricing strategies, and marketing materials. Upon information and belief, the Individual Defendants copied such information to personal email accounts and external storage devices prior to their termination. The Individual Defendants have also failed to return DearDoc's property, including company-issued laptops provided during their employment, despite their contractual obligation to do so.

38.    The harm caused by Defendants' ongoing misuse of DearDoc's Confidential Information is immediate and irreparable. Defendants' continued use of such information threatens to permanently erode DearDoc's market share, goodwill, and competitive advantage, which cannot be adequately remedied by monetary damages alone. Accordingly, injunctive relief is necessary to prevent further harm.

*Non-Competition and Non-Solicitation Obligations*

39.     Under their NDAs, the Individual Defendants agreed to devote their full time and best efforts to DearDoc and to refrain from engaging in any business that competed with DearDoc's products or services during employment and for one (1) year thereafter.

40.     The NDAs further prohibited them, for one (1) year post-termination, from soliciting any DearDoc employee, client, or business opportunity, or from inducing any employee to terminate employment with DearDoc.

41.     Specifically, the NDAs stated as follows:

- 7. Competitive Activities.
  (a)  During the term of my employment with the Company, I will devote my full time and best efforts to the business of the Company.
  (b)  During the term of my employment with the Company, and for a period of one (1) year thereafter, I will not, directly or indirectly, whether as owner, partner, shareholder, consultant, agent, employee, co-venturer or otherwise, engage, participate, provide services to or invest in any business activity anywhere in the world which develops or markets products or performs services which are directly competitive with the products or services of the Company, or products or services which the Company has under development or which are the subject of active planning at any time during the term of my employment, except for passive investments in any public or private entity not exceeding two (2%) percent of the total issued and outstanding equity thereof where I have no involvement in such entity or its business activities other than exercising my voting rights as an equity holder. I understand that the restrictions set forth in this Section 7 are intended to protect the Company's interest in its Proprietary Information and established customer relationships and goodwill, and agree that such restrictions are reasonable and appropriate for this purpose.

- 8. Non-Solicitation. During the term of my employment with the Company, and for a period of one (1) year thereafter, I will not (i) hire or recruit any employees or former employees of the Company or solicit or encourage, or cause others to solicit or encourage, any employee of the Company to terminate his or her employment with the Company, or (ii) solicit for or on behalf of any Person or divert to any Person, any employee, customer, client or business opportunity of the Company. Without limitation, the foregoing shall include hiring or attempting to hire for or on behalf of any Person, any officer or other employee or otherwise encouraging any officer or other employee to terminate his or her relationship with the Company. For purposes hereof, the term "Person" shall mean any natural person, corporation, partnership, limited liability company, trust or similar entity.

42. Under the Separation Agreements, the Individual Defendants reaffirmed their continuing obligations including, specifically, confidentiality, non-disparagement, and non-solicitation, in exchange for consideration in the form of severance payments.

43. Upon information and belief, while still employed by DearDoc and receiving compensation and benefits therefrom, the Individual Defendants breached their duty of loyalty and violated their NDAs by actively planning, marketing, and launching Cloudgain, a directly competing business.

44. Furthermore, in direct violation of their non-solicitation obligations, following their termination, Camilleri and Antonio actively solicited and attempted to recruit at least one DearDoc employee, Vincent Berardi ("Berardi"), to join Cloudgain.

45. In further breach of their contractual obligations, the Individual Defendants continued to communicate with current DearDoc employees about internal business matters, in an effort to undermine employee morale and loyalty, and made false and disparaging remarks about DearDoc its management, and its business practices to employees.

46. Additionally, Cloudgain, acting through its agents, employees, and representatives, including but not limited to the Individual Defendants, knowingly and intentionally solicited DearDoc's existing and prospective clients in direct violation of the non-solicitation provisions contained in the Individual Defendants' NDAs and Separation Agreements.

47. For example, in or around September 2025, after the Individual Defendants' separation from DearDoc, Vincent Berardi ("Berardi"), acting on behalf of Cloudgain and at the direction of the Individual Defendants, directly contacted DearDoc's existing client, Dr. Goldberg, and actively solicited him to terminate his relationship with DearDoc and move his business to

Cloudgain, which solicitation was in furtherance of Defendants' scheme to misappropriate DearDoc's clients and trade secrets.

48. In furtherance of this scheme, Cloudgain made false and misleading statements regarding its products, services, and business relationships, and made disparaging and false statements about DearDoc, its products, services, and business practices to DearDoc's existing clients, prospective clients, and other third parties in the marketplace.

49. Among other material misrepresentations calculated to confuse the market and divert DearDoc's clients, Cloudgain falsely and fraudulently claimed to have a partnership with WebMD, a relationship held exclusively by DearDoc.

50. In another instance demonstrating Defendants' pattern of deceptive conduct, a Cloudgain representative, acting within the scope of his employment and with Cloudgain's knowledge and approval, falsely and fraudulently represented himself as a founder or affiliate of DearDoc.

51. Defendants' actions were willful, malicious, and undertaken with the intent to harm DearDoc's business and gain unfair competitive advantage by misappropriating its Confidential Information and trade secrets.

52. As a direct and proximate result of Defendants' unlawful conduct, DearDoc has suffered and continues to suffer substantial and irreparable harm, including but not limited to loss of revenue, loss of clients, loss of business opportunities, loss of goodwill, damage to reputation, and loss of competitive advantage in the marketplace.

## AS AND FOR THE FIRST CAUSE OF ACTION
## AGAINST ALL DEFENDANTS
### (For Misappropriation of Trade Secrets Under 18 U.S.C.A. § 1836)

53.    Plaintiff repeats and realleges each and every allegation set forth above as though fully set forth herein.

54.    DearDoc owns and maintains valuable Confidential Information and trade secrets, including but not limited to: 1) Clients list, 2) Pricing strategies and fee structures, 3) Marketing playbooks and sales methodologies, 4) Vendor lists and exclusive contracts, 5) Proprietary sales materials, 6) Financial information and projections, and 7) Strategic business plans and competitive analyses.

55.    DearDoc's Confidential Information and trade secrets constitute protectable proprietary information that: (1) derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from their disclosure or use; and (2) is the subject of efforts by DearDoc that are reasonable under the circumstances to maintain its secrecy, including through confidentiality agreements, restricted access controls, password protections, and employee training protocols.

56.    DearDoc has taken reasonable measures to maintain the secrecy of its trade secrets, including confidentiality agreements, access restrictions, and other technological safeguards and protocols.

57.    Upon information and belief, Defendants Camilleri and Antonio misappropriated DearDoc's trade secrets by: (1) accessing and copying DearDoc's Salesforce database to export client lists, contact information, and sales pipeline data without authorization; (2) wrongfully retaining company-issued laptops and electronic files containing pricing

strategies, marketing playbooks, vendor contracts, and proprietary sales materials after termination; (3) using such misappropriated information to develop Cloudgain's business model, client targeting strategy, and competitive positioning; (4) disclosing DearDoc's confidential pricing structures and service capabilities to Cloudgain and its agents; and (5) utilizing DearDoc's client relationships and goodwill to solicit business for Cloudgain while falsely representing to DearDoc's clients that Cloudgain could provide services that only DearDoc is licensed and authorized to provide.

58.    Defendant Cloudgain, acting through and with full knowledge of the Individual Defendants who founded and operate the company, knowingly acquired, used, and disclosed DearDoc's trade secrets for competitive advantage, despite knowing or having reason to know that: (1) such information was acquired through breach of the Individual Defendants' confidentiality obligations and fiduciary duties; (2) the Individual Defendants were bound by restrictive covenants prohibiting such use and disclosure; (3) the information constituted DearDoc's proprietary and confidential trade secrets; and (4) use of such information would cause irreparable harm to DearDoc's competitive position and client relationships.

59.    As a direct and proximate result of Defendants' misappropriation, DearDoc has suffered and continues to suffer irreparable harm for which monetary damages are inadequate, including: (1) loss of its unique competitive advantage in the marketplace derived from its proprietary methods and exclusive service offerings; (2) erosion of goodwill and business reputation built through years of investment and client relationships; (3) loss of existing and prospective clients who have been solicited by Defendants using DearDoc's own confidential information; (4) disclosure and devaluation of trade secrets that can never be made secret again once disclosed; (5) compromised data security and breach of client

confidentiality; and (6) ongoing competitive disadvantage as Defendants continue to exploit DearDoc's proprietary information for Cloudgain's benefit. The continuing nature of this harm and the impossibility of fully quantifying or remedying the damage through money alone necessitates immediate injunctive relief.

60.    DearDoc is entitled to (1) injunctive relief pursuant to 18 U.S.C.A. § 1836(b)(3)(A) prohibiting Defendants from any further use, disclosure, or dissemination of DearDoc's trade secrets, and requiring the return and destruction of all materials containing such information; and (2) an award of compensatory damages pursuant to 18 U.S.C.A. § 1836(b)(3)(B) including but not limited to lost profits, unjust enrichment, and the value of misappropriated trade secrets; (3) exemplary damages pursuant to 18 U.S.C.A. § 1836(b)(3)(C) for willful and malicious misappropriation; and (4) reasonable attorneys' fees; and (5) such other and further relief as the Court deems just and proper, all in amounts to be determined at trial but exceeding the jurisdictional minimum of this Court.

### AS AND FOR THE SECOND CAUSE OF ACTION
### AGAINST INDIVIDUAL DEFENDANTS
### (For Breach of Contract)

61.    Plaintiff repeats and realleges each and every allegation set forth above as though fully set forth herein.

62.    Camilleri and Antonio each entered into valid, binding, and enforceable written agreements with DearDoc, including their respective Non-Competition, Non-Disclosure, and Non-Solicitation Agreements dated February 1, 2023 and May 15, 2023 (the "NDAs"), and subsequent Separation Agreements dated January 30, 2025 and January 28, 2025.

63.    The NDAs required Camilleri and Antonio to, among other things:

(a)     Maintain the confidentiality of DearDoc's Confidential Information both during and
        after their employment;

(b)     Refrain from competing with DearDoc's business during employment and for a
        period of one (1) year thereafter; and

(c)     Refrain from soliciting DearDoc's employees, customers, or business opportunities
        during employment and for one (1) year following termination.

64.     DearDoc fully performed all of its obligations under the NDAs and Separation Agreements,
        including without limitation severance payment in the gross amount of $29,134.52 to
        Camilleri and $10,000.00 to Antonio, which severance payments were expressly
        conditioned upon the Individual Defendants' continued compliance with the terms of the
        Separation Agreements and the NDAs incorporated therein.

65.     Upon information and belief, Defendants Camilleri and Antonio breached Section 7
        (Competitive Activities) and Section 8 (Non-Solicitation) of their respective NDAs, as well
        as the confidentiality and non-disparagement provisions of their Separation Agreements by,
        among other acts:

(a)     Using and disclosing DearDoc's Confidential Information to establish and operate
        Cloudgain, a directly competing business;

(b)     Soliciting or attempting to solicit DearDoc's clients and employees; and

(c)     Making disparaging and misleading statements about DearDoc.

66.     As a direct and proximate result of these breaches, DearDoc has sustained, and continues to
        sustain, substantial damages, including but not limited to loss of clients, revenues, loss of
        goodwill, and loss of competitive advantage.

67. DearDoc is entitled to recover compensatory damages in an amount to be determined at trial, together with equitable relief enforcing Defendants' contractual obligations, including injunctive relief to prevent further violations and an order requiring Defendants to return all Confidential Information and trade secrets in their possession, custody, or control.

## AS AND FOR THE THIRD CAUSE OF ACTION
## AGAINST ALL DEFENDANTS
### (Misappropriation of Trade Secrets under New York Common Law)

68. Plaintiff repeats and realleges each and every allegation set forth above as though fully set forth herein.

69. Defendants' conduct constitutes misappropriation of trade secrets under New York common law.

## AS AND FOR THE FOURTH CAUSE OF ACTION
## AGAINST INDIVIDUAL DEFENDANTS
### (Breach of the Duty of Loyalty)

70. Plaintiff repeats and realleges each and every allegation set forth above as though fully set forth herein.

71. As employees of DearDoc, Camilleri and Antonio owed DearDoc a fiduciary duty of loyalty and good faith, including the duty not to compete with DearDoc, divert business opportunities, or misuse confidential information during their employment.

72. During their employment, Camilleri and Antonio breached their duty of loyalty by, among other things, secretly developing, marketing, and operating Cloudgain, a directly competing business while still employed at DearDoc, and by diverting DearDoc's resources and opportunities for their personal gain.

73. As a direct and proximate result of Defendants' breaches, DearDoc suffered substantial damages, including loss of business opportunities, revenue, and goodwill.

74.    DearDoc is entitled to compensatory and punitive damages in an amount to be determined at trial.

**AS AND FOR THE FIFTH CAUSE OF ACTION**
**AGAINST ALL DEFENDANTS**
**(Tortious Interference with Contractual Relations)**

75.    Plaintiff repeats and realleges each and every allegation set forth above as though fully set forth herein.

76.    DearDoc maintains valid contractual and business relationships with its employees, clients, and vendors.

77.    Upon information and belief, Defendants, with full knowledge of those relationships, intentionally and wrongfully interfered by soliciting DearDoc's employees and clients, disparaging DearDoc, and inducing such parties to breach or terminate their relationships with DearDoc.

78.    Following their termination, and in direct violation of the non-solicitation provisions of their NDAs and Separation Agreements, Camilleri and Antonio solicited and attempted to recruit DearDoc employee Vincent Berardi to leave DearDoc and join Cloudgain.

79.    The Individual Defendants also continued to communicate with current DearDoc employees about DearDoc's internal business matters, proprietary information, and strategic plans, and made false and disparaging remarks about DearDoc and its management to such employees in an effort to damage DearDoc's reputation and induce employees to leave.

80.    Additionally, Cloudgain, acting through its agents, solicited DearDoc's existing and prospective clients in violation of the non-solicitation provisions.

81. For example, shortly after their separation from DearDoc, Berardi, purportedly acting on behalf of Cloudgain, contacted DearDoc's existing client, Dr. Goldberg, encouraging him to move his business to Cloudgain.

82. Such interference was accomplished through wrongful means, including breach of contract and misappropriation of trade secrets.

83. As a direct and proximate result of Defendants' tortious interference, DearDoc has suffered and continues to suffer substantial damages, including the loss of clients, revenue, business opportunities, and goodwill.

84. DearDoc is entitled to compensatory and punitive damages in an amount to be determined at trial.

**AS AND FOR THE SIXTH CAUSE OF ACTION**
**AGAINST ALL DEFENDANTS**
**(Unfair Competition)**

85. Plaintiff repeats and realleges each and every allegation set forth above as though fully set forth herein.

86. Defendants engaged in unfair competition by misappropriating DearDoc's Confidential Information, trade secrets, client relationships, and goodwill, and by making false and misleading representations to DearDoc's clients, all to compete unfairly through Cloudgain and divert DearDoc's business to themselves.

87. Defendants' actions were willful, malicious, and undertaken in bad faith with the intent to injure DearDoc's business and divert its customers.

88. Defendants' conduct constitutes unfair competition under New York common law.

89. As a result of Defendants' unlawful actions, DearDoc has suffered and continues to suffer irreparable harm, including loss of customers, goodwill, and competitive advantage.

90. DearDoc is entitled to injunctive relief and an award of compensatory and punitive damages in an amount to be determined at trial.

**AS AND FOR THE SEVENTH CAUSE OF ACTION**
**AGAINST INDIVIDUAL DEFENDANTS**
**(Conversion)**

91. Plaintiff repeats and realleges each and every allegation set forth above as though fully set forth herein.

92. DearDoc is the rightful owner of all company-issued equipment, data, and documents provided to Defendants during their employment, including tangible personal property such as laptops as well as intangible Confidential Information such as client lists, sales materials, and proprietary files.

93. Upon information and belief, following the termination of their employment and despite demands for return of company property, Defendants Camilleri and Antonio wrongfully retained DearDoc's property, including company-issued laptops and documents containing Confidential Information, refused to return such property, and further accessed DearDoc's Salesforce platform without authorization to export and download internal contact lists, client data, and proprietary business information for use in competing against DearDoc.

94. Individual Defendants' conduct was unauthorized and constituted an intentional exercise of dominion and control over DearDoc's property inconsistent with DearDoc's ownership rights, and was done with the intent to deprive DearDoc of its property and to use such property for Defendants' own benefit and to compete against DearDoc.

95. As a direct and proximate result of Individual Defendants' unlawful conduct, DearDoc has suffered and continues to suffer substantial damages, including but not limited to loss of proprietary information, loss of the value and use of the converted property, compromised

data security, competitive harm from Defendants' use of the converted property, loss of clients and revenue, and costs associated with investigation, recovery, and remediation.

96.  Individual Defendants' actions were willful, wanton, and undertaken in bad faith, thereby entitling DearDoc to compensatory and punitive damages in an amount to be determined at trial.

### AS AND FOR THE EIGHTH CAUSE OF ACTION
### AGAINST ALL DEFENDANTS
### (For Unjust Enrichment)

97.  Plaintiff repeats and realleges each and every allegation set forth above as though fully set forth herein.

98.  Plaintiff invested substantial time, effort, and capital in developing its Confidential Information including sales scripts, sales pitches, internal process documents, client lists, pricing strategies, and marketing materials, designs, configurations, processes, methods, techniques, formulas, systems, software and codes, improvements, inventions, data, copyrightable materials.

99.  Individual Defendants have unjustly enriched themselves by unlawfully copying and retaining Plaintiff's Confidential Information, without authorization.

100.  Cloudgain has unjustly enriched itself by using Plaintiff's Confidential Information that was unlawfully obtained through Individual Defendants.

101.  As a result of the foregoing, Defendants have committed flagrant acts of unfair competition against DearDoc, for their own wrongful benefit and profit.

102.  Plaintiff and Cloudgain do not have a contractual relationship, and as such, Plaintiff does not have any other adequate relief at law.

103.   It is against equity and good conscience to permit the Defendants to retain Plaintiff's Confidential Information.

### AS AND FOR THE NINETH CAUSE OF ACTION
### AGAINST INDIVIDUAL DEFENDANTS
#### (For Reasonable Attorneys' Fees)

104.   Plaintiff repeats and realleges each and every allegation set forth above as though fully set forth herein.

105.   The foregoing conduct of the Defendants, of which Plaintiff complains, constitutes breaches of obligations owed to Plaintiff.

106.   Plaintiff is entitled to recover reasonable attorneys' fees under the agreements, including specifically under the Separation Agreements, which provide for reasonable attorneys' fees and costs in case of breach of the Separation Agreements or the Confidentiality Agreements (i.e., the NDAs).

107.   Furthermore, Plaintiff is entitled to reasonable attorneys' fees pursuant to 18 U.S.C.A. § 1836(b)(3)(C) because of Defendants' willful and malicious misappropriation of Plaintiff's trade secrets.

108.   Plaintiff demands from Defendants, jointly and severally, a judgment for its reasonable attorneys' fees, costs, expenses, and disbursements incurred in connection with this action.

WHEREFORE, Plaintiff DearDoc, Inc. respectfully requests that the Court:

 (a)   Issue a preliminary and permanent injunction prohibiting Defendants from any further use, disclosure, or dissemination of DearDoc's trade secrets, and requiring the return and destruction of all materials containing such information;

(b)  Compensatory damages including but not limited to lost profits, unjust enrichment, and the value of misappropriated trade secrets in an amount to be determined at trial but exceeding the jurisdictional minimum of this Court;

(c)  Exemplary damages pursuant to 18 U.S.C.A. § 1836(b)(3)(C) and New York common law for willful and malicious misappropriation, in an amount to be determined at trial but exceeding the jurisdictional minimum of this Court;

(d)  Reasonable attorneys' fees and costs; and

(e)  Such other and further relief as the Court deems just and proper.


Dated: October 28, 2025
       Brooklyn, New York

                                      KAHN YUNIVER LAW

                                      */s/ Irene Sinayskaya Kahn*____
                                      Irene Sinayskaya Kahn, Esq.
                                      710 Avenue U
                                      Brooklyn, New York 11223
                                      T: (718) 402-2240
                                      F: (718) 305-4571
                                      E: Irene@kypcl.com